## A94A1971. HARRIS v. THE STATE.
(455 SE2d 387)

ANDREWS, Judge.

The appellant, Michael Harris, was convicted of burglary. On appeal, he complains of various evidentiary rulings and the trial court's jury instructions.

During the early afternoon of September 17, 1993, the next-door neighbor of the victim looked out his window and noticed a man coming off the victim's porch, carrying the bicycle of the victim's son. He asked the man what he was doing and the stranger replied that he lived there. When the neighbor indicated that he knew that was untrue, the stranger yelled out "Mike." This individual disappeared while the neighbor called for the police.

Police officers who responded to the call patrolled the area and observed Harris on a nearby street, wearing a tee shirt and blue shorts and carrying a black and silver duffle bag bearing the "Wilson" sporting goods logo. One officer stopped Harris and noticed that he was slightly out of breath and perspiring heavily as if he had been jogging. After another officer arrived at the scene, Harris identified himself and showed them a tattoo on his chest with the name "Michael" on it, which reminded one of the officers of the neighbor's report about the individual who called out for "Mike." They obtained Harris's consent to search the duffle bag and found items of clothing and a pillow case; they also felt something hard in the bottom of the bag but did not check to see what it was. Harris explained that he had picked up the clothing from his cousin, and the officers allowed him to leave.

However, the officers stopped Harris again moments later when one of the officers remembered that a video game may have been taken during the burglary. They again obtained Harris's permission to search the duffle bag, and discovered a cordless telephone in the bottom of the bag. Because the victim had also reported a cordless phone missing from her home, the officers then arrested Harris and transported him to the victim's house. The victim identified the cordless telephone and the pillow case, and also indicated that the clothing worn by Harris belonged to her son.

1. The state was allowed to present evidence of similar transactions solely by producing certified copies of indictments and convictions obtained against Harris in 1980, 1984, and 1990 for burglaries of residential dwellings in Richmond County. Harris contends that the admission of such evidence was error, and we are constrained to agree.

"[I]n its presentation to the trier of fact, the state must do more than merely introduce a certified copy of a conviction and/or indictment into evidence. The state must present the trier of fact with evidence establishing both that the accused committed an independent offense or act and that the connection and/or similarity between that offense or act and the crime charged is such that proof that the accused committed the former tends to prove that the accused also committed the latter." *Williams v. State*, 261 Ga. 640, 642 (409 SE2d 649) (1991).

At a pretrial hearing to determine the admissibility of similar transaction evidence, the prosecutor may establish a prima facie case of admissibility by introducing certified copies of the defendant's previous convictions and stating in his place the relevant facts of the conviction, but such does not satisfy the state's obligation to present proof on that issue at trial. *Stephens v. State*, 261 Ga. 467, 468-469 (6) (405 SE2d 483) (1991).

In the instant case, the state only presented certified copies of three previous indictments of Harris for burglary bearing the finding of guilt or a guilty plea by Harris. Under these circumstances, the state failed to satisfy the requirements of *Stephens* and *Williams* regarding the showing of similarity, and we are unable to dismiss the error as harmless. See *Faulkner v. State*, 206 Ga. App. 3 (424 SE2d 287) (1992).

2. Harris's remaining enumerations of error are without merit.

*Judgment reversed. Johnson, J., concurs. Beasley, C. J., concurs specially.*

BEASLEY, Chief Judge, concurring specially.

I concur because even if the State showed sufficient indicia of similarity between the prior convictions and the incident on trial, the State failed to affirmatively show that the evidence was offered "not to raise an improper inference as to the accused's character, but for some appropriate purpose." *Williams v. State*, 261 Ga. 640, 642 (2b) (409 SE2d 649) (1991).

As to similarity, the documents admitted show that all four of Harris' prior crimes were burglaries (two in 1980, one in 1984, and one in 1990), which were perpetrated in Richmond County and were at residences. In each case Harris made the unauthorized entry with the intent to commit a theft. The prior burglaries were committed close

in time to each other and to the one on trial, discounting the periods of incarceration. It is true that there was no evidence that the modus operandi was similar to that used in this case.

The indicia of similarity pointed out in *Moore v. State*, 202 Ga. App. 476, 479 (2) (414 SE2d 705) (1992), are not sufficiently described to establish admissibility of the evidence here. *Moore* conceded similarity, and the court merely pointed out in dicta the distinction between the prior acts and those found inadmissible in *Stephens v. State*, 261 Ga. 467 (405 SE2d 483) (1991). The degree of similarity must be such that " 'proof of the former tends to prove the latter.' " *Chastain v. State*, 260 Ga. 789, 791 (3) (400 SE2d 329) (1991).

*Stephens* and *Williams*, supra, do not absolutely prohibit using just the indictment and conviction when they do show sufficient similarity for the purpose for which they are admitted. See *Kirkland v. State*, 206 Ga. App. 27, 28 (3) (424 SE2d 638) (1992); *Wheat v. State*, 205 Ga. App. 388 (2) (422 SE2d 559) (1992); *Dean v. State*, 211 Ga. App. 28, 31 (4) (438 SE2d 380) (1993). See also *Adams v. State*, 208 Ga. App. 29, 33-37 (3) (430 SE2d 35) (1993) (physical precedent only). It depends on what is contained therein and the purpose for which such evidence is offered.

The State introduced the convictions to show intent and course of conduct, that defendant followed a common design and had a bent of mind towards committing burglaries such as the one on trial, and motive. These documents were presented in the State's case-in-chief. The defense, presented thereafter through defendant's testimony alone, was that defendant was found in possession of items from the victim's house because he found the duffle bag and contents at a dumpster nearby and that the clothes he was wearing, which the victim claimed were taken from her house, had been purchased by him previously. Thus the defense was that he was not involved in the burglary, was an innocent and unwitting possessor of certain stolen items, and that others claimed to have been stolen were his own. This was similar to what he had told the officers, which was part of the State's evidence.

Identity was the issue, that is, whether defendant was involved in the burglary with the person seen or as the burglar himself. The evidence was not admitted for that purpose and the jury was not charged that this was one of the limited purposes for which it was admitted.[1] The State's attorney specifically agreed with the trial

---

[1] The effect of the limited-purpose charge is problematic in itself, because of the unnatural compartmentalization of thinking which is required of the jurors. In a recent case before us, the transcript shows that after the trial court gave the limited-purpose charge with respect to evidence of other offenses, the court asked the jury, "Do you understand, ladies and gentlemen, what I just got through saying or is it Greek to you?" The transcript reveals:

court's statement that the State was not trying to prove identity through the prior transactions.

It is true that the State had to prove specific intent, but defendant had not told the officers when interviewed on the street that he had entered the residence with a legitimate intent. The prior incidents did not constitute evidence necessary to prove intent; possession of the stolen articles and the implausible explanation given by defendant when questioned proved that. Instead, they tended to prove that the explanation of innocence given the officers was at least suspect because defendant was a house burglar of long standing. That is what is prohibited. See, regarding state of mind, *Prophitt v. State*, 183 Ga. App. 332, 333 (358 SE2d 892) (1987) (Beasley, J., concurring specially).

The fact that the prior crimes were of the same sort is not sufficient for admission into evidence, because they were also "wholly independent, separate and distinct." *Bacon v. State*, 209 Ga. 261, 263 (71 SE2d 615) (1952). See also *Cox v. State*, 165 Ga. 145 (1) (139 SE 861) (1927). As pointed out in *Bacon*, there must be a "logical connection" between the earlier act and the one on trial so that the earlier one tends to prove the fact at issue, which in that case, was defendant's intent. Here, it was identity.

In *Weems v. State*, 204 Ga. App. 352 (419 SE2d 346) (1992), there were sufficient details to show a similar method of operation and therefore identity between the burglary on trial and one committed within days in the same apartment complex. By the same token, another residential burglary several years earlier was not shown to be sufficiently similar or connected and was erroneously admitted for the purpose to be served. However, the court concluded that, due to the strength of the other evidence, including fingerprints, it was "highly probable" that the inadmissible evidence did not contribute to the verdict, and the conviction was affirmed. Id. at 355. That same conclusion is not warranted here.

DECIDED MARCH 16, 1995.

*K. Emerson Gillard,* for appellant.
*Daniel J. Craig, District Attorney, Joseph R. Neal, Jr., Assistant District Attorney,* for appellee.

---

"Whereupon, a juror states it's Greek."